UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DUONG TRAN,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-3046-MLP

ORDER

Petitioner Duong Tran is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC"). Through counsel, he filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. # 1.) Petitioner contends his July 29, 2026 redetention violated his procedural due process rights under the Fifth Amendment.[1] (*Id.*, ¶¶ 33-34.) He further contends his continued detention under 8 U.S.C. § 1231(a)(6) violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no reasonably foreseeable likelihood of removal. (*Id.*, ¶¶ 30-31.)

Respondents filed a return (dkt. # 5), supported by the unsworn declaration of their counsel, Katherine G. Collins (dkt. # 6), and the sworn declaration of ICE Deportation Officer

[1] Petitioner additionally raised statutory challenges to his redetention (dkt. # 1, ¶¶ 27-28), which he withdrew in his traverse (dkt. # 8 at 1.)

Ian Bloom (dkt. # 7). Petitioner filed a traverse. (Dkt. # 8.) The Court, having reviewed the parties' submissions and the governing law, GRANTS the petition (dkt. # 1).[2]

## I. BACKGROUND

Petitioner, a citizen of Vietnam, entered the United States as a refugee around 1987 and became a lawful permanent resident. (Dkt. # 1, ¶¶ 15-16; Bloom Decl., ¶¶ 3-4; Collins Decl., Ex. A at 3.) After a 2000 conviction for first degree assault, he was sentenced to 129 months in custody and lost his permanent resident status. (Dkt. # 1, ¶ 17; Bloom Decl., ¶ 5.) In 2003, Petitioner was ordered removed to Vietnam and his appeal to the Board of Immigration Appeals was dismissed. (Bloom Decl., ¶¶ 7-9; Collins Decl., Ex. A at 3.) On completion of his sentence, Petitioner was transferred to ICE custody. (Dkt. # 1, ¶ 18; Bloom Decl., ¶ 10.)

After a period of ICE detention, Petitioner was released on an order of supervision ("OSUP") because the government was unable to effectuate his removal to Vietnam. (Dkt. # 1, ¶¶ 19-20; Collins Decl., Ex. B.) Petitioner asserts in his verified petition that he was detained for six months. (Dkt. # 1, ¶ 19.) Officer Bloom states that Petitioner was in ICE custody for approximately four months from October 27, 2008, to February 17, 2009. (Bloom Decl., ¶¶ 10-11.) While released on the OSUP, Petitioner remarried, had a daughter who is now eight years old, opened two successful restaurants, and began to explore post-conviction relief. (Dkt. # 1, ¶¶ 21-22.)

Petitioner reported to a scheduled ICE appointment on March 31, 2026, and was given forms for a travel document request to Vietnam, which he completed and returned at his April 30, 2026 appointment. (Bloom Decl., ¶¶ 12-13.)

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

On July 29, 2026, Petitioner appeared at a scheduled appointment, where ICE notified him that his OSUP was being revoked to effectuate his removal, and redetained him at NWIPC. (Dkt. # 1, ¶ 23; Bloom Decl., ¶ 14.) The OSUP revocation notice stated that ICE "has the ability and means" to remove him and "is seeking a travel document" to effectuate removal to Vietnam. (Collins Decl., Ex. C.)

On August 27, 2026, Petitioner filed the instant petition. (Dkt. # 1.) That same day, ICE submitted a draft travel document request to its headquarters, which was returned on September 11, 2026, for more information. (Bloom Decl., ¶ 15; *see* Collins Decl., Ex. D.) It is unclear what additional information is needed for Petitioner's travel document request, but Officer Bloom asserts that ICE "expects to remove Petitioner to Vietnam in the normal course once a travel document is obtained." (Bloom Decl., ¶ 16.)

## II. DISCUSSION

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas*, 533 U.S. at 687. A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A. Redetention

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the federal government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1972). In

immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

First, freedom from physical confinement is among the most fundamental liberty interests, and noncitizens are entitled to due process in its deprivation. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690-96. Respondents acknowledge Petitioner's liberty interest but argue it is "reduced" because he is subject to a final removal order and thus his release depends on ICE's ability to effectuate his removal. (Dkt. # 5 at 10.) Respondents' objections are better addressed in the second step of the *Mathews* framework, however. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The first *Mathews* factor weighs in Petitioner's favor.

At the second step, courts in this District have found a low risk of erroneous deprivation when the government has a valid travel document prior to redetaining a noncitizen who is subject to a final removal order. *See, e.g., Thiravong v. Scott*, 2026 WL 1382356, at *3 (W.D. Wash. May 18, 2026). Here, however, the risk of erroneous deprivation was high because no travel document existed, the government had not even sought one from Vietnam, and Petitioner was given no opportunity to address the government's assertion that it could effectuate removal. The notice to Petitioner provided only the conclusory assertion that ICE was able to effect removal,

based on the fact that it was "seeking" a travel document. Yet the record before the Court indicates that, at the time of redetention on July 29, 2026, the government had made no efforts, internal or external, to obtain a travel document. A month later, ICE submitted a draft request to its own headquarters, which two weeks later returned it as inadequate. Now, nearly two months after redetention, there is no evidence before the Court that any request has been submitted to the government of Vietnam or that any progress has been made toward removal. On this record, additional safeguards would have been valuable to prevent an erroneous deprivation of liberty. The second *Mathews* factor thus weighs in Petitioner's favor.

Third, while the government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal[,]" its "interest in re-detaining a noncitizen, who has not violated the terms of their release nor whose removal has not been established to be likely to occur in the reasonably foreseeable future, without a pre-detention hearing or some other pre-detention process is low." *Saelee v. Bondi*, 2026 WL 221513, at *6-7 (W.D. Wash. Jan. 28, 2026). Respondents have not shown removal is reasonably foreseeable, and accordingly its interest in redetaining Petitioner without pre-deprivation process is low. The third *Mathews* factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors favor Petitioner and habeas relief is therefore warranted. Given the lack of lawful process prior to detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy.[3]

---

[3] Petitioner seeks relief on the alternative grounds that his detention has become indefinite pursuant to *Zadvydas*. (Dkt. # 1, ¶¶ 30-31.) Because the Court grants habeas relief based on his procedural due process claim, it need not address the *Zadvydas* claim, as the requested relief is duplicative.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition (dkt. # 1). Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer prior to filing any motion.

Dated this 22nd day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge